```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      FORT LAUDERDALE DIVISION
                     CASE NO.  19-60200-CR-FAM


   UNITED STATES OF AMERICA,

              Plaintiff,

        vs.
                                        Fort Lauderdale, Florida
                                        July 24, 2019
   ALI AHMED and                        Pages 1-17
   SEBASTIAN AHMED,

              Defendants
   _____

            TRANSCRIPT OF PRETRIAL DETENTION HEARING
             BEFORE THE HONORABLE PATRICK M. HUNT
                UNITED STATES MAGISTRATE JUDGE

   APPEARANCES:

   FOR THE PLAINTIFF:
                       United States Attorney's Office
                       BY:  JOHN JUENGER, A.U.S.A.
                       99 Northeast Fourth Street
                       Miami, Florida 33132

   FOR DEFENDANT ALI AHMED:
                       Perlet and Shiner, P.A.
                       BY:  NANCY VORPE QUINLAN, ESQ.
                       515 North Flagler Drive
                       Suite 701
                       West Palm Beach, Florida 33401

   FOR DEFENDANT SEBASTIAN AHMED:
                       Lubell Rosen
                       BY:  BERNARD M. CASSIDY, ESQ.
                       200 South Andrews Avenue
                       Fort Lauderdale, Florida 33301

   TRANSCRIBED BY:     DAWN M. SAVINO, RPR
                       Official Court Stenographer
                       400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
```

PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

```
 1                        P-R-O-C-E-E-D-I-N-G-S
 2            THE COURT:  Call the case, Troy?
 3            COURTROOM DEPUTY:  Yeah.  Calling the case of United
 4   States of America versus Ali Ahmed and Sebastian Ahmed.
 5            Counsel, announce your appearances for the record
 6   starting with the Government.
 7            MS. QUINLAN:  Good morning, Your Honor.  Changing
 8   tables.  Nancy Quinlan on behalf of Mr. Ali Ahmed.
 9            THE COURT:  But old habits die hard.  He said starting
10   with the Government, you jumped right in there, didn't you?
11            MS. QUINLAN:  20 years --
12            THE COURT:  All right.  Let's hear from the Government
13   first.
14            MR. JUENGER:  Good morning, Your Honor.  Jon Juenger on
15   behalf of the United States.  I'm standing in for Mr. Clark.
16            THE COURT:  All right.  You jumped the gun, but we got
17   your appearance.
18            How about for Mr. Sebastian Ahmed?
19            MR. CASSIDY:  Good morning, Your Honor.  Bernard
20   Cassidy on behalf of Sebastian Ahmed.
21            THE COURT:  All right.  For both of you gentlemen,
22   we're here for a detention hearing, but I understand there's
23   been an agreed bond; is that accurate?
24            MS. QUINLAN:  Yes, Judge.
25            MR. JUENGER:  Yes, Your Honor.
```

```
 1              THE COURT:  Mr. Juenger, you want to tell me what that
 2   is?
 3              MR. JUENGER:  Yes, Your Honor.  The parties have agreed
 4   to recommend a $250,000 corporate security bond with a Nebbia
 5   condition.
 6              THE COURT:  First of all, is this as to both?
 7              MR. JUENGER:  As to both, yes, Your Honor.  Only one
 8   minor difference between the two.
 9              THE COURT:  Well, let's deal with them one at a time.
10   Let's start with Ali Ahmed.
11              MR. JUENGER:  Yes, Your Honor.  It's a $250,000
12   corporate security bond with a Nebbia, special conditions
13   including electronic monitoring to be paid for by the Defendants
14   which tie to home confinement with specific allowances.  Report
15   to Pretrial Services three times per week in person or as
16   directed by Pretrial Services.  Surrender of all passports and
17   travel documents.  Travel limited to the Southern District of
18   Florida.  Ceasing any involvement in the healthcare field which
19   includes closing two particular companies called Medi, MD,
20   that's M-E-D-I, MD and Arnica Health, A-R-N-I-C-A, health.
21              As for Ali Ahmed, the one different condition Pretrial
22   Services recommended is that he continue with mental health
23   treatment.  It seems appropriate given the contents of the
24   Pretrial Services Report.
25              THE COURT:  Are the conditions you just listed the same
```

1  for both but with respect to Ali Ahmed only mental health
2  treatment?
3          MS. QUINLAN:  May I see the Pretrial Services --
4          THE COURT:  Sure.  And this is a bond that we're
5  expecting them to make?
6          MS. QUINLAN:  Yes, but not today.  We'll have to meet a
7  Nebbia condition.
8          THE COURT:  Okay.  All right.  But Ms. Quinlan, is that
9  your agreement?
10         MS. QUINLAN:  Yes sir, except that co-counsel is going
11 to address Mr. Ali's ownership interest in the *(unintelligible)*
12 because he was on the case before our firm.
13         MR. CASSIDY:  Your Honor, one minor end -- if I may
14 just -- the businesses are going to be shut down.  It's just a
15 quirk in this is that the indictment alleges that Mr. Ali Ahmed
16 owns Medi MD and Arnica.
17         THE COURT:  Hold on.  But you represent Sebastian, but
18 you previously represented both?
19         MR. CASSIDY:  This sort of relates to both, and the
20 conditions --
21         THE COURT:  Okay.
22         MR. CASSIDY:  -- Your Honor.  It's both counsel's
23 position that Mr. Ahmed does not own those entities.  However,
24 the parties will agree that these entities will be shut down.
25         THE COURT:  Those entities being Medi, MD and Arnica

1  Health?

2  MR. CASSIDY: Arnica Health.

3  THE COURT: All right. So the special conditions are
4  that neither one of them will be involved in anything involving
5  healthcare, and also that those two entities will be shut down
6  or that they will not be involved in those two entities?

7  MR. CASSIDY: That those two entities will be shut
8  down. They will be shut down.

9  THE COURT: Is that the Government's agreement?

10 MR. CASSIDY: Before they can be released from --

11 MR. JUENGER: Yes, Your Honor. That's the agreement.

12 THE COURT: Okay. With that exception of that
13 statement, is everything as related by Mr. Juenger accurate?

14 MS. QUINLAN: Yes. It's my understanding that the only
15 -- what is the condition of mental health treatment, just mental
16 health treatment?

17 MR. JUENGER: It says in the Pretrial Services Report
18 that he was already receiving treatment, so he'll continue.

19 MS. QUINLAN: Okay. It was just a continuation of
20 treatment, nothing new. Mental health treatment. Thank you.

21 THE COURT: All right. Let me take a minute to look at
22 the Pretrial Services Report.

23 MS. QUINLAN: The reference is to Page 4, mental health
24 and substance abuse.

25 THE COURT: Okay. Is the pending case in Palm Beach

```
1    County this case or is it related?
2            MR. JUENGER:  I think it is somewhat related, Your
3    Honor.  It's not exactly related.
4            THE COURT:  All right.  But he's on bond on that case?
5            MS. QUINLAN:  Yes.
6            THE COURT:  All right.  I've reviewed the charging
7    document of both the Pretrial Services Report.  I'm going to
8    address most of this, the conditions together, and where it's a
9    different condition, I'll address you both separately.  And
10   counsel, please let me know if I'm getting something wrong.
11           But with respect to both Ali Ahmed and Sebastian Ahmed,
12   having reviewed those documents and based on the agreement of
13   counsel, I'll set the bond that's been recommend.  As to each of
14   you, it will be a $250,000 corporate security bond with a Nebbia
15   condition.  Nebbia condition means that I have to be satisfied
16   as to the source of the money that's used to secure the bond.  I
17   think I've advised both of you or all of you that my practice is
18   not to require a hearing or an affidavit.  Mr. Juenger, if the
19   defense counsel can satisfy you as to the Nebbia, simply notify
20   Troy and as long as you are willing to okay it, then I won't
21   require a separate hearing or an affidavit or a motion, okay?
22           MR. JUENGER:  Thank you, Your Honor.
23           THE COURT:  All right.  So that will be 250,000
24   corporate surety bond with a Nebbia.  Mr. Ahmed, that means you
25   have to go through a bondsman, pay a premium and it will be
```

1   secured by property.  Your lawyers, I'm sure, have explained all
2   of that to you.
3          I'm going to go through some conditions and we're going
4   give you some paperwork to sign.  You'll be bound by that
5   paperwork, so make sure you read it and understand it before you
6   sign it.
7          First and most important condition as to each of you is
8   that you not -- is that you do appear at all hearings.  Stay in
9   touch with your lawyers, they'll let you know when and where to
10  appear.  If you don't appear for hearings, you could be charged
11  with a separate crime of bond jumping, that might be more
12  serious than what you're already charged with.  You'll also
13  forfeit the bond that you're posting and any property that's
14  used to secure it.
15         You also, of course, are not to commit any other crimes
16  while you're on bond.
17         You are each to surrender your passports.  Do they both
18  have passports and are they here today?
19         MS. QUINLAN:  We need to try to locate his passport.
20  Right now I don't have it.
21         MR. CASSIDY:  Your Honor, we have ours here today.
22         THE COURT:  All right.  So both of you have to
23  surrender your passports.  So Sebastian Ahmed is here today,
24  right?  Turn that over to Pretrial Services.  Ms. Quinlan,
25  please get ahold of that passport and turn it over to Pretrial

1  Services.  As to both of you, you're not to try to acquire any
2  passports or other travel documents while you're on bond.
3         You're to report to Pretrial Services as directed, and
4  the agreement is that that be three times a week in person or as
5  directed by Pretrial?
6         MR. JUENGER:  Well, it was both, Your Honor.  The
7  agreement was three times in person, but I assume that leaving
8  that up to Pretrial Services if they wish to alter that.  I'm
9  sure we're fine with that.
10        THE COURT:  If you're fine with that, I would prefer to
11 leave it up to them.  So I'll leave it up to Pretrial to let you
12 know where, when and how often the reporting is going to be.
13        Is there need for drug testing for either one of them?
14        MS. QUINLAN:  That wasn't a condition we discussed, no.
15        MR. JUENGER:  I don't believe so, Your Honor, based on
16 my review of the Pretrial Services Report.
17        THE PROBATION OFFICER:  Mr. Ali reported prior usage
18 over 15 years ago.  Mr. Sebastian didn't report any.
19        THE COURT:  All right.  As to both of you, you're not
20 allowed to use any illegal drugs while you're on bond, that
21 includes marijuana.  There doesn't seem to be an issue, so I'm
22 not going to require testing; however, if Pretrial were to
23 report to me that they think there's an issue of any kind of
24 drug use, I would change that.  So to be clear, no illegal
25 drugs, but I'm not going to test you at this time.

1   With respect to Mr. Ali Ahmed, you're to continue the
2   mental health treatment that you're currently receiving.
3   Full-time employment as to both?
4   MR. JUENGER: Yes, Your Honor, with the exception of
5   the healthcare restriction.
6   THE COURT: All right. You're both to seek and
7   maintain full-time employment during the pendency of this case.
8   You're not going to be permitted to have any employment in the
9   field of healthcare, and also I'll add that other condition now
10  as to both of you. Before you can be released, there has to be
11  proof to the Government that the entities referenced previously,
12  that being Medi MD and Arnica Health have been shut down and
13  cease to operate?
14  MR. JUENGER: That will work, Your Honor.
15  THE COURT: All right. You're not to have any contact
16  with any victims or witnesses except through your attorneys. If
17  you have any doubt as to what that means, talk to your lawyers
18  about it and lawyers, if you have any doubt about what that
19  means, talk to Mr. Juenger and he'll let you know what that
20  means. So no contact with anyone who could be considered to be
21  a victim or witness in the case, except through your lawyers and
22  of course their investigators.
23  Firearm restriction, they're not convicted felons?
24  MR. JUENGER: I'm not aware.
25  THE COURT: All right. I'm not going to require a

1   firearm restriction.
2           Travel restricted to the Southern District of Florida,
3   but you also are agreeing to electronic monitoring and home
4   confinement?  With what restrictions?  I mean, you want them to
5   be able --
6           MR. CASSIDY:  Your Honor, there's a small issue that I
7   e-mailed Mr. Juenger and Mr. Clark about this, and we haven't
8   gotten this worked out yet.  Can we submit an order to the Court
9   because I'm requesting that he be allowed to travel to see his
10  child in the Northern District, and they haven't gotten back to
11  me yet on that so for now.
12          THE COURT:  He's ten feet away from me.  Why don't you
13  ask him?
14          MR. CASSIDY:  Mr. Clark is actually the decision-maker
15  and he hasn't --
16          MR. JUENGER:  That's correct, Your Honor.  I envisioned
17  allowances as those typically set forth on the minute order and
18  again, it's true that they made a request for this visitation.
19  Mr. Clark, unfortunately, is several hours behind us.  I haven't
20  heard a response.  I'm sure we could contact the Court.  If he's
21  in agreement with that, we can make that modification.
22          MR. CASSIDY:  So we might as well leave it as it is for
23  now.
24          THE COURT:  All right.  But the as-is you're
25  requesting, home confinement with the exceptions?  Is it

1   anticipated that these guys are going to be working?  Because at
2   that point, it becomes easier to do a schedule with a curfew but
3   if that's not worked out yet, we can amend that at a later time.
4          MR. JUENGER:  Well, that's true, Your Honor.  My
5   understanding of their employment is as being sort of in the
6   consulting space and tied to the conduct in the indictment, so I
7   don't know what the employment would be per se.  I think
8   employment generally is a good idea, but --
9          THE COURT:  All right.  Let's do this.  Based on the
10  agreement of parties, we will -- they'll be on home confinement,
11  electronic monitoring to be paid for by the Defendants.  They
12  will be allowed to leave their residences for medical needs,
13  court appearances, attorney visits, religious reasons and
14  employment.  And I'm giving Pretrial Services advanced
15  authorization to authorize any of those releases.  If there
16  comes a time when they have any full-time employment where they
17  have to leave the house at regular schedules, then it probably
18  makes sense to modify that to a curfew but --
19         THE PROBATION OFFICER:  Your Honor, just a quick
20  question in regards to Mr. Ali.  He reported he owns *(inaudible)*
21  Media, Inc. for which he's a business consultation for a
22  different healthcare companies.  Would that also be something he
23  would not be able to do?
24         THE COURT:  I guess not.
25         MR. JUENGER:  Correct, Your Honor, to the extent it

1  involves healthcare companies.
2            THE COURT:  Anything involving -- yeah, if it's
3  consulting, anything that involves healthcare you're not allowed
4  to do that.  So I'm requiring you to maintain or seek full-time
5  employment, but I'm also putting pretty significant restrictions
6  on that.  So for now, it's going to be home confinement and it
7  may be that whatever kind of work you do you can do from your
8  home.  As I said, if there comes a time where you're doing a
9  regular 9 to 5, I think it makes more sense for us to amend the
10 conditions so that there's a curfew, but we'll cross that bridge
11 when we come to it.
12           Similarly with travel, your travel, both of you, unless
13 there's a regular need to travel which is inconsistent with your
14 home confinement, but so we'll just restrict it to the Southern
15 District of Florida.  But if any of you need to travel for any
16 reason, within reason, Pretrial Services has authorization to
17 grant that.  If it's outside the district, you'll have to
18 request permission from the Court and prior to requesting
19 permission from the Court, contact Pretrial Services, contact
20 the Government.  And also, if you file a motion, please include
21 in your motion where they're going, when they're going and where
22 they're staying and how they can be contacted.
23           Does that cover everything?
24           MS. QUINLAN:  ...has a question of me, if you could
25 give me just a moment?

```
 1              THE COURT:  All right.  While you're doing that,
 2   Mr. Juenger, any additional special conditions?
 3              MR. JUENGER:  No, Your Honor.  Is Mr. Clark now the
 4   oldest living US Attorney?  Or longest tenure?  I don't mean
 5   living, but he's been around a while.
 6              MR. JUENGER:  No, I don't think so.  He's still very
 7   productive though, I got to give him credit.
 8              MR. CASSIDY:  Your Honor, my client has indicated that
 9   he has another business that he works in, unrelated to
10   healthcare, it's in the construction industry.  He has an office
11   that he does go to, a Regus office space that he has, it's not
12   at the same location as the entity that's involved, the entities
13   involved here.  Is it possible to do a curfew for him to attend
14   there or should I just take that up and modify it?
15              THE COURT:  Discuss it with Mr. Juenger and see if it's
16   agreed to and if so, I'll approve it.  If not --  but do that
17   now.  I mean if --
18              MS. QUINLAN:  Thank you, Your Honor.  My client's
19   concern is for the passport.  He's saying the passport is lost.
20   I advised you that we were making efforts to locate the
21   passport.  How would we handle that?  Could I ask for a hearing
22   with respect to the passport?  Or he's concerned he couldn't get
23   out if his passport is lost.  He moved from one house to another
24   and right now it's lost.
25              THE COURT:  I'll take your representation.  You're not
```

```
 1    to be in possession of any passports or travel documents.  If
 2    it's lost and you're representing to me today that it's lost,
 3    okay.  If you find it, you need to immediately turn it over to
 4    Ms. Quinlan and she'll immediately turn it over to Pretrial
 5    Services, or you can do that directly to your Pretrial Services
 6    Officer.  All right?  I mean, I don't see the need to have a
 7    separate hearing where you're going to tell me the same thing,
 8    right?
 9              THE DEFENDANT:  Yeah, and I'll wear an ankle monitor so
10    --
11              MS. QUINLAN:  He'll wear an ankle monitor.
12              THE COURT:  Right.
13              MS. QUINLAN:  Yes.
14              THE COURT:  All right.  So with respect to
15    Mr. Cassidy's question, what's the Government's position on
16    that?
17              MR. CASSIDY:  Judge we -- because Mr. Juenger is
18    standing in, I don't want to push him on it either, so we'll
19    confer with Mr. Clark and we'll ask the Court to modify the
20    order.
21              THE COURT:  All right.  Then I'll set the conditions
22    that I've already set.  If you want any modification of any
23    kind, including travel or modification to a curfew, talk it over
24    with Mr. Clark and if it's agreed, I would approve it, but
25    you'll have to file a motion.
```

1        Any additional special conditions, Mr. Juenger?
2        MR. JUENGER:  No, Your Honor.  Thank you.
3        THE COURT:  Ms. Quinlan?
4        MS. QUINLAN:  No, sir.
5        THE COURT:  All right.  Mr. Cassidy?
6        MR. CASSIDY:  No, Your Honor.
7        THE COURT:  All right.  We're going to give you the
8   bond paperwork, gentlemen.  You're going to have to fill it out.
9   As I said, you're bound by that.  Make sure you understand that
10  if you have any questions, talk to your lawyer about it before
11  you sign it and then you will not be released until the bond is
12  posted and the Nebbia is satisfied.  As I told you, you can do
13  that orally.  Just contact Troy if the Nebbia is satisfied and
14  he'll communicate that to me and I'll authorize the release.
15       It's also here for report re counsel and arraignment.
16  Ms. Quinlan, are you permanent?
17       MS. QUINLAN:  Not yet.  I signed -- I filed a notice of
18  temporary appearance.  We'd ask for Tuesday to make final
19  arrangements.
20       THE COURT:  Final arrangements sounds to final.
21       MR. CASSIDY:  Same here, Judge, for Mister --
22       THE COURT:  Okay.  Any objection from the Government?
23       MR. JUENGER:  None.
24       THE COURT:  All right.  With respect to both then,
25  we'll reset the arraignment until -- what's the date, Troy?

1      COURTROOM DEPUTY:  July 30th, Your Honor.
2      THE COURT:  All right.  And I'll find as to both
3  Defendants that the motion to continue the arraignment to permit
4  the Defendants to hire counsel, it will be granted and the time
5  from today through the rescheduled date is excluded from the
6  deadline for trial or for arraignment rather as computed under
7  the Speedy Trial Act, since the ends of justice served by
8  granting this continuance outweigh the interests of the
9  Defendant and the public and speedy trial.
10     And before I finalize that finding, Mr. Ali Ahmed, is
11 that what you want to do?  Put off your arraignment by a couple
12 of days to make sure you have time to hire counsel?
13     DEFENDANT ALI AHMED:  Yes.
14     THE COURT:  You understand you could go forward today
15 with -- you could ask to go forward today without final
16 arrangements being made, but you can't do that without a lawyer.
17 But you understand that -- do we even have to do that with an
18 indictment in place?
19     COURTROOM DEPUTY:  I don't think so, Your Honor.
20     THE COURT:  All right.  Just to be sure.
21     And with you Mr. Sebastian Ahmed, are you also
22 requesting this brief continuance?
23     DEFENDANT SEBASTIAN AHMED:  Yes, Your Honor.
24     THE COURT:  Then the previous findings that I made,
25 they may not be necessary, but I'm making the findings anyway

```
 1   that the continuance will be excludable time under the Speedy
 2   Trial Act.
 3           All right.  So we'll see you back for arraignment next
 4   week.
 5           Anything else we need to do in this case today,
 6   Mr. Juenger?
 7           MR. JUENGER:  Not from the Government.
 8           THE COURT:  Ms. Quinlan?
 9           MS. QUINLAN:  The only -- I don't know what your
10   practice is.  Since I'm temporary and I have a partner, Marc
11   Shiner who is out of town, can I keep the Pretrial Services
12   Report?
13           THE COURT:  No.  You can only keep it up to and
14   including the time of the hearing, but as I mentioned earlier
15   for Mr. Michelen, if you want to take time, sit in the back of
16   the court, write down any information you want to write down,
17   you can do that and then you'll have to turn it back over to
18   pretrial.
19           MS. QUINLAN:  Thank you.
20           THE COURT:  Okay?  All right.
21           Anything else to come before the Court with respect to
22   Sebastian Ahmed?  Mr. Cassidy?
23           MR. CASSIDY:  What that, Your Honor?
24           THE COURT:  Anything else to come before the Court?
25           MS. QUINLAN:  No, Your Honor.  Thank you.
```

1            THE COURT:  All right.  Good luck to you both.

2            MR. JUENGER:  Thank you, Your Honor.

3            (PROCEEDINGS CONCLUDED)

4                           * * * * *

5                        **C E R T I F I C A T E**
   I certify that the foregoing is a correct transcript from the
6  digital audio recording of proceedings in the above-entitled
   matter.
7

8  8/14/2019              _/s/ Dawn M. Savino_
   Date                    DAWN M. SAVINO, RPR
9